IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE:                                    )
COLLEGE BOOK RENTAL                       ) NO. 12-09130
COMPANY, LLC, DEBTOR                      ) CHAPTER 11
                                          ) JUDGE HARRISON
                                          )
                                          )
ROBERT H. WALDSCHMIDT,                    )
TRUSTEE                                   )
                                          ) NO. 3-15-0141
v.                                        ) JUDGE CAMPBELL
                                          )
CA JONES MANAGEMENT                       )
GROUP, LLC, et al.                        )

MEMORANDUM

Pending before the Court is Defendants' Renewed Motion for Summary Judgment (Docket

No. 9). For the reasons stated herein, Defendants' Renewed Motion is DENIED.

INTRODUCTION

Plaintiff is the Chapter 11 Trustee for College Book Rental Company, LLC, which is the

Debtor in the above-captioned matter in the U.S. Bankruptcy Court in Nashville. This adverse

proceeding comes to this Court upon the Trustee's Motion to Withdraw the Reference (Docket No.

1), which Defendants did not oppose (Docket No. 2), and which the Court granted on February 18,

2015 (Docket No. 3).

Defendant CA Jones Management Group ("CAJM") is a management company, owned and

controlled by Defendant Charles A. Jones. At all relevant times, CAJM managed the operations and

financial affairs of numerous entities, including the Debtor. The Trustee alleges that, prior to the

Debtor's bankruptcy, there were numerous questionable transactions benefitting Defendants and their

related companies to the detriment of the Debtor. The Complaint alleges breach of fiduciary duty and fraudulent transfers and seeks to recover transfers and damages on behalf of the Debtor.

While this adversary proceeding was pending in Bankruptcy Court, Defendants moved for summary judgment on the Trustee's claims, and the Bankruptcy Judge denied Defendants' Motion. Defendants have renewed that Motion herein.[1]

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been

---

[1] The Statement of Undisputed Facts filed by Defendants does not comply with Local Rule 56.01(b) in that it does not set forth each fact in a separate paragraph with a specific citation to the record for each fact. Narrative paragraphs of facts, with narrative paragraphs of responses, are not helpful to the Court.

presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## ANALYSIS

Defendant argues that the transactions at issue herein were undertaken in accordance with written contracts, were taken in good faith, and were taken for the on-going benefit of the Debtor. Defendants also claim that Defendant Jones did not receive funds from the Debtor and Defendant CAJM received only such funds as were provided for in a written contract for reasonably equivalent value. Defendants assert that, under Wyoming law,[2] they are entitled to a presumption that their business decisions were made by disinterested and independent directors on an informed basis and with a good faith belief that the decisions would serve the best interests of the corporation and that Plaintiff cannot rebut that presumption.[3] Plaintiff contends that there are genuine issues of material fact as to all of Plaintiff's claims, and the Court agrees.

One need only look to the Declarations of Scott Wright, John Wittman, David Griffin and Robert H. Waldschmidt compared to the Affidavit and Declaration of Charles A. Jones to know that most of the facts surrounding the subject transfers and transactions are disputed.

For example, Defendant Jones states that the Debtor, SE Book Company, and Baker & Taylor executed a Memorandum of Understanding ("MOU") for Baker & Taylor to furnish books and cash

---

[2]     The Debtor is a Wyoming LLC.

[3]     Clearly, the Debtor in this case is not a corporation, but an LLC. Moreover, Defendants are not independent and disinterested in that Defendant Jones is part owner of the Debtor and sole owner of Defendant CAJM.

to the Debtor. Mr. Wittman, who negotiated this deal for Baker & Taylor, states that the MOU was between the Debtor and Baker & Taylor only, not SE Book. The MOU itself is signed by representatives from Baker & Taylor and C.A. Jones Management. Plaintiff contends that the Baker & Taylor transactions were unreasonable because they benefitted SE Book and ultimately Defendant Jones to the detriment of the Debtor.

Defendant Jones states that Baker & Taylor loaned the Debtor several million dollars to fund operation and expansion of the related companies. Wittman declares that Baker & Taylor never loaned money to any of the companies involved herein. He states that all funds Baker & Taylor advanced to the Debtor were intended to be applied to the purchase of books for Baker & Taylor. He also contends that Baker & Taylor never intended any of its funds to be used to pay any outstanding loans for SE Book or any other of the related companies, never intended to loan money to SE Book or any other of the related companies, and never intended to pay SE Book's expenses or third-party creditors.

Yet Defendant Jones states that after the Debtor got the loan from Baker & Taylor, it immediately provided the funds to SE Book to repay $5.3 million in outstanding loans and then loaned it an additional $3.2 million to pay expenses incurred in the ordinary course of business.[4] The parties have stipulated that neither Defendant is in possession of any documentation showing that the Debtor received any benefit from the transfer of Baker & Taylor funds from the Debtor's

_____

[4]       Scott Wright, who was Chief Financial Officer for CAJM from October 2011 until August 2012, states that he understood the money from Baker & Taylor went directly to Mr. Jones and he later learned that many accounts receivable for companies other than the Debtor were paid using the Baker & Taylor funds.

accounts. As a result of the alleged "loans" from Baker & Taylor, which have not been repaid, Baker & Taylor has asserted claims against the bankruptcy estate of the Debtor.

Although Defendant Jones states that SE Book had a positive cash flow and the Debtor had "excess cash," Mr. Wittman declares that the Debtor never had a positive cash flow during the time Defendant Jones was in charge. Wittman states that the entire time period Jones was in control of the Debtor, the Debtor operated at a loss and relied upon loans, credit and other questionable financial transactions to maintain cash flow.

Mr. Griffin, co-owner of the Debtor and other companies with Defendant Jones, states that he never agreed that CAJM would be paid $2.3 million annually by the Debtor as a management fee. The Management Agreement between the Debtor and CAJM does provide that the Debtor will pay to CAJM an annual management fee in the amount of $2,385,556.83. The Management Agreement is signed by Defendant Jones for the Debtor and also by Defendant Jones for CAJM.

Mr. Griffin also declares that he never agreed that the Debtor and SE Book could engage in undocumented and unaccounted for inter-company loans or transactions paid as Jones directed. Jones states that SE Book and the Debtor routinely made inter-company transfers to reduce capital costs. The Trustee declares that Defendants are unable to account for significant payments by the Debtor to CAJM.

Defendant Jones states that he and others put strong controls into place to ensure the success of the Debtor. The Trustee declares that statement to be untrue and states that there were no strong controls in place to ensure the success of the Debtor. The Trustee says this is demonstrated in a number of ways, including Defendants' inability to account for much of the money paid by the Debtor to CAJM or SE Book. Mr. Griffin also declares that, through this litigation, he learned that

Defendant Jones did not put strong controls into place to ensure the success of the business, to ensure that Jones not move money around arbitrarily among the related companies, or to ensure that Jones did not pay CAJM or any other entity he owned without a proper basis for doing so.

Defendant Jones states that he had appropriate procedures in place for the Debtor to take book returns or to charge students for unreturned books. Mr. Wittman declares this statement to be untrue and states there is no evidence that the Debtor had taken any action to charge its customers for unreturned books or to enforce its rights to collect for those books.

For all these reasons, and the fact that just about every assertion by Defendant Jones is contested, Defendants have not carried their burden of showing that there are no genuine issues of material fact and they are entitled to judgment as a matter of law. A jury will have to determine which facts to believe and then whether the Plaintiff has proved breach of fiduciary duty and/or fraudulent transfers.

With regard to Defendants' reliance upon the business judgment rule under Wyoming law, the Court notes again that the Defendants in this case are not disinterested and independent "directors" of the Debtor.[5] Moreover, the presumption applies where the directors act with due care, good faith and in the honest belief that they are acting in the best interests of the company. The allegations in this case are that Defendant Jones breached his fiduciary duties and duties of care, and Plaintiff has shown there to be genuine issues of material fact as to these allegations.

In addition, the allegations here support a claim that Defendant Jones' actions were the product of self-dealing. Plaintiff has alleged and shown there to be genuine issues of material fact

---

[5] The business judgment rule would not apply to Defendant CAJM in any event, since it is not a director, officer or member of the LLC.

as to whether Defendant Jones engaged in self-dealing through his actions concerning the Debtor and the related companies, particularly since he cannot account for substantial amounts of money paid by the Debtor to companies solely owned and controlled by him. Plaintiff has asserted that the bank records, filed at Docket No. 15-7, show that the Debtor, directly and indirectly, paid funds to accounts owned or controlled by Defendant Jones.

Because of the inability of Defendants to account for the transfers from the Debtor to CAJM and the lack of any formula for allocating the management fee or the portion to be paid to CAJM employees (*See* Stipulation No. 10 and Wright Declaration, ¶ 11), there are genuine issues of material fact as to whether the transfers to Defendants were made for reasonably equivalent values and also as to the financial condition of the Debtor at the times of these transfers. These are fact-specific inquiries.

For all these reasons, Defendants' Motion with regard to the accounting claim fails as well.

CONCLUSION

Defendants' Renewed Motion for Summary Judgment (Docket No. 9) is DENIED. This case is set for trial by contemporaneous Order.

IT IS SO ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE